Chief Justice RoBebtson,
rlelivered the opinion of the Court.
This appeal is prosecuted to reverse a judgment in detinue, by Francis Fernetta Mauldins, asoinst Thomas Pvle, for two slaves, and for $145.62| damages for the detention of them.
The anpellee claimed the slaves under an instrument of writing purportino-to he a deed of o-iff from Charlotte Adame, dated the 26th or 27th of September, ISlf). and which reserved to the donor the possession for five years succeeding its date.
The appellant derives his claim from a purchase of the slaves bv him the 13th of June, 1826, under a fieri facias which had been issued in his favor against William Pyle and Charlotte his wife, formerly Charlotte Adams, the donor.
If does not appear that there had ever been an actual deliverv of the slaves to the appellee, or that she had ever been possessed of them except so far as the possession of the donor after the acknowledgment of the deed might he deemed the possession of the donee On the 27th of June, 1820, the deed was proved bv one subscribing witness in the county in which the parties resided, and in July, 1820, it *203 was proved by another subscribing-witness, and was actually recorded either when first proved, or when last proved, but at which of the times the proof does not distinctly shew.
Whonthchus-' ban<1 is,,be th^ii^not tho nominal, plaintiff in a pf,'tent wit-' ness,
The appellant assailed the deed,- because — 1st. It was procured, as he alledged, by duress. 2d. Possession was never delivered to the appellee. But the circuit court instructed the jury, that an actual delivery of the slaves was not necessary for vesting the legal right in the donee, if the donor “executed” the deed, and if it had been recorded in the county in which the parties, or one of them lived.
> The appellee having proved on the trial that both the appellant and William Pyle (the husband of the donor) had made declarations tending strongly to shew that the appellaht was not in fact a creditor, but that his judgment was merely colorable, and that he bought the slaves for William Pyle, and that this suit is for William’s benefit, the circuit court decided that Mrs. Pyle, the donor, was not a competent witness for the appellant, and refused to permit him to have her sworn either in chief, or on her voir doir.
After verdict, the circuit court overruled a motion for a new trial, made on the ground that the court had erred in the progress of the trial, and that the verdict was contrary to the law and evidence of the case.
As the circuit judge had a right to infer from the evidence that the husband was interested in the event of the suit, and was in fact the beneficial party, the examination of the wife on her voir doir would have been useless. I-f the appellant himself had admitted on the trial that her husband was interested directly in the event of the suit, nothing that she could have said on examination as to her interest, could have rendered her competent. We are therefore of opinion, that there was no error in refusing to permit her to be sworn, because there was sufficient proof that the appellant had admitted that her husband was interested.
But, conside ring the appellant, not as a bona fide creditor or purchaser, but merely as the friend and *204 agent of William Pyle, in whiih altitude the jury had a right, from the proof, to phue him. we ...e nevertheless of opinion, that he vías entiiieil to a new trial — 1st, because the Client court cien m its instruction to the jury, aiiji 2ü, became the verdict is contrary to both the law and the iau.
ifeyl ofgiftof iiave, wneu does' not a o-company the dBP<1> w,li'?"f evmn from 6 donor io dothrdrnfbe acinatlv retorded Wiinai eighi nio-dhs . om its a.e.
1st. I- the deed be, as it purports to he, a Gift, a-delivery, in form or fact, of the slaves was not essential to the right of the donee., is the (feed had bet n proved or acknowledged and recorded within eight mouths from ttie day of ns date. A good consideration is expressed in the deed, and seems in hut to have res ulted fiom the relation in winch the pufies stood to each other. Without actual delivery, a parol gift would have been inefieitnal; but a deed of gift, when deliveieit, per transfers the possession with the properly, and when duly rei orbed, vests a perfect and irrevocable legal-right m iiie donee. This doctrine is too tamiliar to need t Rations of cases in support of it.
But as between donor and donee of a slave, the title does not pass, unless actual possession of the s]avc s|iaj| have been delivered, or unless the deed shall have been actually recorded according to the requisitions of the law prescribed for such cases, The deed itself does not transfer either the posses-session or the right, (in such case) unless it sh.dl fie duly recorded. The 4-1 at sec. ot an act of L79S, (-~iK^ ^’g!- 1158) declares that “no gift ot gifts of any felave or slaves shall he good or sufficient to pass any estate in such slave or slaves, to any person or peiv-ons yyhiiiever, unless the same be made by will, duly prove({anc¡ recorded, or by deed in writing to be proved by two witnesses, or acknowledged by the donor, and recorded in the. Piinty Court, or court of quarter sessions, win re one of the parties lives, or in the distrn t court or court of appeals, within eight months after the date of such deed.”
The 42d section restricts the application of the 41st, to gifts of slaves, “whereof the donors have, notwithstanding such gifts remained in possession.” And the 43d section of the same act saves the rights of creditors and purcha*ers until the donee shall have remained in possession at least three years.
According to the sealed in-inT'ngbmd'of the naixte of u 8- wllK'.h C and sale to be recorded, a ^fn and'sale does not pass the title even lro“ baricam- or to ba>gainee, unless the deed here-°he thne'prescribed by statute’
The 41st section alone applies to this case as the donor retained the possession, and that section seems to require, not only that there, shall be a deed, but also, that it shall be actnally recorded within eight months after its date, upon the acknowledgment of the donor, or upon proof of its execution, by two witnesses. fbe recording, as well as the deed itself, is made indispensable to the title.
The language of this section is in substance like that of 27th U. VIII. C. 16, sec. 2, requiring deeds of bargain and sale to be recorded. In each the deduration is, in substance, that no title shall pass, &c. And according to the settled and practical mterpretation in England of the statute of enrolments of H VÍÍÍ, a deed of bargain and sale was inoperative, as between bargainor and bargainee, unless it had been recorded within the time prescribed by the statute: and when it had been so recorded, the title vested ab initio, or from the delivery, by relation
It seems to us that the 41st section of our statute of ’98, must be construed to have the same operation and effect as to gifts of slaves by deed without actual change of possession, as the 2nd section the 16th ch. of the statute of H. VIII. has been uniformly allowed to have as to deeds of bargain and sale-
It is true, that the reason assigned in the preamble for enacting the 41st sec. of the act of 1798, is the security of bona fide creditors and purchasers of donors of slaves; and hence the inference might be drawn that, saving the rights of such persons, deeds of gift of slaves, without recording, and without any change of possession in fact, might bo valid and effectual between ihe parties to the deeds. But the security of creditors and purchasers was also the chief object of the statute of enrollments of 11. VIIL; nevertheless, tin? registration of the deed, as required by the statute, was ever deemed indispensable to pass the title from the vendor, because parliament, in its wisdom, saw lit to require the recording of the deed as essential to the passing of the title to the vendee.
It is also true that the statute of Frauds (1st Dig’t. 617-18) declares that conveyances intended for d«r *206 frauding creditors or purchasers, shall be void except as between the parties to the deeds, and that conveyances of goods and chatties, without consideration, or upon consideration not deemed valuable in law, shall be deemed fraudulent, unless possession shall, bona fide, remain with the donee, or unless the deed shall be acknowledged or proved by two witnesses, and deposited for registration, within eight months after the “execution thereof .” But this statute should not materially influence the construction of the 41st section of that of 1198, for several reasons.
1st. The Statute of Frauds was enacted in 1196, and the Legislature, with that act before them, reenacted, from a Virginia statute of 1758, the 41st section of the act of 1798, requiring expressly that, in order to pass the title to a slave from a donor to a donee, there should not only be a deed proved, or acknowledged and deposited for registration, but also that the deed shall be actually recorded within eight months, not from its “execution,” but from its “date.”
2d. The 41st section of the statute of 1798, applies expressly to the parties to the gift, and governs the question of right between them. But the statute of frauds, of 1796, applies to creditors and purchasers only, and does not affect the right as between the parties to the deed, unless they actually intended it for defrauding others; and then it shall be binding between themselves: but if there be no fraud in fact in a deed of gift of chatties, the statute of frauds does not operate upon the deed except so far as bona creditors or purchasers of the donor may be concerned; and consequently, though the deed may be void as to creditors or purchasérs, in consequence of an omission to have it deposited in the proper time and place to be recorded; yet, as between the parties themselves, it can have no greater efficacy than it would have had without the statute of frauds, and will therefore pass to the donee no right unless it can have such an operation independently of that statute.
3d. The statute of frauds applies to chatties: the 41st section of the act of ’S8 applies to slaves, and to slaves alone. A deed of gift of chatties (not *207 including slaves) may pass a perfect title to the donee, although there never was a delivery in fact of the chatties, and although the deed had never been recorded or deposited for registration, at any time either before or after the lapse of eight months from its execution or its date. It seems, therefore, that the legislature deemed it proper to have a peculiar law for deeds of gift of slaves — and we cannot perceive any reason why that law shall not be expounded according to the plain import of its own express words: and thus construing it, there can be no doubt that the recording of the deed is made as indispensable as the execution of a deed, and that no title can pass without both as expressly required by the statute, or unless actual possession in the donee accompany and follow the gift.
If a deed of gift of slaves be recorded within eight eallendar months, it is sufficient. Its computing the eight months, the time within which a deed of gift of slaves is reqnired to be recorded, the day of the. date of the deed must be excluded.
To record a deed on the testimony of one witiicss, wharetholaw requircs the atte-iaiioa ncSS[ S, is a nugatory act.
*207 Even if the act of 1798 had never been passed, a parol gift of a slave would not have vested in the donee any title unless possession had followed the gift, and a deed, loithout registration, and without an actual delivery of the slave, might have passed to the donee dll the right of the donor. This is a strong consideration tending to prove that the chief object of the 41st section of the act of 1798 was to make the title dependent on the recording of the deed.
The deed, in this case, would have been recorded iu due time, if it had been recorded the 27th of June, 1820, upon the proof of two witnesses. The months intended by the statute are eallendar, though according to the ancient rule they would have been lunar; and in computing the time, the clay of the date must be excluded. — (Cowp. 714.)
But the deed had been proved by only one witness prior to the lapse of the eight months — and thereupon, the recording of it on the 27th of June upon the proof of only one witness, was a nugatory act even if it were then thus recorded. There is no proof that it had been recorded within eight months of its date, either upon acknowledgment, or upon the proof of two subscribing witnesses, and consequently according to the law of ’98 it can have no operation transferring title or possession, unless there had been some valuable consideration for it.
.Mordicad, for appellant; Crittenden, for appellee^
-p(|f tfle cjr'otiit judge instructed the jury that if it had been recorded, without qualification as to the time or mode, a delivery, in fact, of the slaves was necessary to the title of the appellee. In this unqualified generality of expression on erroneous doctrine wa« implied, and the instruction, as given, did not present, with proper distinctness, the true .anpheatmn of the law.
jj. The damages exceed the maximum which the facts authorised the jury to find. 'vhe appellant could not he. according to the proof liable for hire prior to his purchase in .Tune. 18^6. and the Jury have assessed more than the established value of the use from that time to the finding.
Wherefore, the judgment of the circuit court is •reversed and the cause remanded for a new trial.